GEORGE S. CAPELLE and RICHARD B. DUNCAN, trading in the name and style of CAPELLE & DUNCAN, v. ELIZABETH G. BAKER, Executrix of GEORGE R. BAKER, deceased.

THERE is a well recognized distinction to be found in the books between ambiguity and uncertainty in general in the language of statutes, and a palpable absurdity, or downright contradiction occuring in two or more provisions of one and the same statute; for where the absurdity is so palpable, or the contradiction, or error is so gross, that it is rectified by the context as soon as it is read, it may be corrected by judicial construction.

The lien of a judgment is in fact no part or portion of it, but only an effect or ncident of it. It is invisible, of course, even on the face or in the body of it, and exists only in the binding force, effect and operation which the law accords to it. A judgment creditor has, by virtue of the lien of it, no right to the land or property bound by it, for it is neither *jus in re*, nor *jus ad rem*—neither a *right in*, nor a *right to* the property, and therefore, if he should release all his right in, or all his right to, the property, he might afterward extend or sell it on the judgment; for the lien after all, amounts only to a security against subsequent purchasers and incumbrancers.

The proceeding and judgment specially provided for under the mechanic lien law, or statute "securing to mechanics and others payment for labor and materials in erecting or repairing any building or structure within the State," is not a proceeding and judgment *in rem*, but a proceeding and judgment *in personam* exclusively, when the claim is for materials furnished or labor performed in erecting, altering, or repairing any building or structure on real estate, and to become a part of the realty: but it is otherwise when the claim is for materials furnished or labor performed in building or repairing any ship or vessel in the State. And being in the former case, a proceeding against the defendant in the suit personally, the judgment when recovered, is against him personally also, and is general as well as special in its character and effect. For it becomes as such a general lien on all the real estate of the defendant from the date of the recovery of it, and also a specific lien on the building or structure described in the affidavit filed in the suit, and the real estate on which it is situated, from the day upon which the work and labor was begun, or the furnishing of the materials was commenced in the erection, alteration, or repair of it. And such judgment is final and conclusive, and an absolute bar to the recovery of another judgment at common law, or under the general statute, for the same original cause of action against the same defendant.

And a judgment obtained under the general statute, for work and labor performed, or materials furnished to an amount exceeding twenty-five dollars, in the erection of any building or structure in the State, on a

bill of particulars and affidavit filed describing the property for which the work and labor, or materials were furnished, will also be an absolute bar to the recovery of another judgment thereon under the special or mechanic lie ; statute upon such a claim.

Even a purely remedial statute is not to have any operation anterior to the enactment of it, without an intention clearly indicated in the terms of it, that it shall have that effect.

On motion for judgment upon a mechanic lien claim, at the first term is not the time for the court to hear and determine definitively, questions or objections as to the propriety and sufficiency of the bills of particulars, or affidavits filed in support of them, but as they are the *ex parte* acts of the plaintiff done out of court, it behooves him in particular, to see that they are, in all material respects, in strict conformity with the provisions of the statute, for whenever the question practically arises, if arise it should, with reference to the propriety or sufficiency of them in any essential particular, the burden of showing it must devolve upon him and upon no one else.

SUMMONS case under the mechanics' lien law. This case with nine others of the same kind at the suit of other parties against the same defendant, were stated and argued together at the same hearing this term by the counsel of the parties respectively, as the questions involved in all of them depended upon the construction to be given by the Court to the statute recently enacted entitled "An Act securing to mechanics and others payment for labor and materials in erecting or repairing any building or structure within the State of Delaware," passed, March 7th 1861. *Del. Laws.* 12 *vol.* 181. In the fall of 1860 the erection of a block of four story brick houses, consisting of eleven in number, was commenced by the deceased, George R. Baker, in the City of Wilmington, and continued through the spring and summer of 1861, and by the following November Term of the Court, all the affidavits and bills of particulars for the materials furnished and the labor performed by the several plaintiffs in the suits, in the building of them, were filed in the office of the Prothonotary, on which motions were made in each of the cases at that term for judgment and an order on the Prothonotary to ascertain the amounts thereof from the affidavit and bill of particulars filed in each of the cases pursuant to the pro-

44

visions of the statute, so as to secure the benefits of the lien of such a judgment as is thereby specially provided for in such cases. Owing, however, to an egregious error in the penning of the statute and the supposed necessity of an amendment at the next session of the legislature to correct it, and other delays, the motions in all the cases had continued pending and undisposed of until the present term, and in the mean while the original statute with the error rectified in it, had been re-enacted in all other respects in the same words.

*Nields*, for the plaintiffs. The first statute was passed on the 7th of March, 1861. It contained a manifest and unquestionable error in the very beginning of it and in the most material and essential provision of it, and which, if not corrected by the reading and construction of the court, as it should be by every one who reads it, so manifest and apparent is it, will have the effect, though it consists of but one small word of three letters, not only to nullify the whole statute, but actually to stultify the whole legislature in passing it. It consists in the word "not," which occurs and is evidently entirely out of place, in the fifth line of the first section as printed, and which begins and reads as follows : "It shall and may be lawful for any person or persons having performed or furnished work and labor, or materials, or both, to an amount not exceeding twenty-five dollars, in or for the erection, alteration or repair of any building, or structure" &c. to proceed to obtain judgment therefor with a lien on the same, as is afterward particularly provided for in the subsequent provisions of the act. Whilst in the same sentence or paragraph, it proceeds to provide that in order to do this lawfully and to obtain the benefits of its provisions, that same person must, among other things, and within the time designated in it, file in the office of the Prothonotary of the county, an affidavit setting forth that the defendant is justly indebted to him therefor "in a sum exceeding twenty-five dollars," and has refused or neglected to pay, or secure to be paid to him,

the amount so due &c. This error, so glaring and palpable, was afterward corrected, however, by the re-enactment of the statute with the word " not" omitted in that line of the section, on the 21st day of January 1862, *Del. Laws* 12 *vol.* 214. And as the latter was merely what the former was meant and intended to be, and what the former in fact and in truth really was in regard to that matter, it must be considered to have been rightly and rightfully, so far as the rights of the plaintiffs in these cases are concerned or involved in the question, as the law of the State on the subject, from the date of the passage of the first act, which was the 7th of March, 1861. But if the court should hold that it could not have that effect and operation, then the error was so obvious and self-evident in the first act, that it could not be allowed to vitiate its meaning, and defeat and annul its whole effect; and to prevent such a result, the court would, by judicial construction, correct such a plain and evident mistake, and interpret the statute according to the true meaning and intention of it. *King v. Inhabitants of Everdon,* 9 *East* 107. 7 *Bac. Abr.* 550. *Dwar. on Stat.* 2 *Law Libr.* 41. *Beeson v. Beeson,* 1 *Harr.* 466.

*T. F. Bayard, for the defendant.* There are defences to be presented which apply alike to all the cases, and there are others which apply only to some of them. The original act of 1861, was the only law in existence on the subject when these various suits were instituted, or various bills of particulars and affidavits were filed and motions for judgments were thereon made at the November Term of that year. The first rule in regard to the construction of statutes when the language is vague or ambiguous, requires that it must be so construed as to effect the intention of the legislature which passed it, but the court must confine itself to the words used and found in the statute, and ought not to reject words, and controlling words in particular, which occur in the phraseology of it, or introduce words which do not appear in it. And in regard to single words and their precise meaning, the rule and maxim is *a verbis*

*legis not est recedendum,* and that they must be read and interpreted according to the natural and obvious import and meaning of them as employed in the statute. The courts, therefore, cannot give new, or forced, or strained interpretations or constructions to any of the terms used in it, or insert a word here, or strike out a word there, to effect what they may imagine was the intention of the legislature. It is the duty of the legislature to make the law, and of the court to apply it as made, to the case when it comes before it. There would be but little necessity for either caution or precision in drawing legislative enactments, if it is to be understood that the courts in administering them, can mould and warp them according to their own notions or impressions of what they ought to be, or that any and every error in them can be corrected, or supplied by the mere exercise of the power of judicial construction. *Sedw. on Stat. & Cons. Law,* 252, 260, 261, 311. There is another rule on the subject which forbids the construction contended for on the other side, of the provision now in question, and that is that it is a statute in derogation of the common law, and which not only alters the common law, but affects existing statutory remedies, and takes away common law rights in such cases as it applies to, and for that reason it must be construed strictly, and is not to be favored or extended in its effect and operation by an indulgent, liberal or equitable construction of it. *Ibd.* 313, 314. A statute conferring extraordinary powers on the courts, or authoriizng summary administrative proceedings affecting or divesting rights of property, is also to be construed strictly. *Ibd.* 351. And Dwarris states it as a maxim generally true that if an affirmative statute, which is introductory of a new law, directs a thing to be done in a particular manner, it shall not, even though there are no negative words to the contrary, be done in any other manner. *Dwar. on Stat.* 9 *Law Li.r.* 641. *Sedw. on Stat. & Cons. Law, in note,* 323.

But which of the conflicting and contrary readings in the first section of the act of 1861, is to prevail? The first,

certainly, and not the second or subsequent reading, in analogy to the well-known rule of construction applicable to conflicting provisions in the case of a deed, and not in conformity with the opposite rule which prevails in the construction of conflicting provisions contained in a will. The re-enactment of the statute in 1862 with the word now in question omitted from it, does not vary or affect the rule of construction which he had just stated, in their application to it at this time, because that act was wholly silent in regard to it, and assigns no reason whatever for the simple re-enactment of it in the same identical terms, with that exception only, and it therefore does not appear that the legislature had any intention of substituting the latter for the former act, or that the latter should take effect from the date of the passage of the first act; and the court will refuse to give it any retroactive operation or effect whatever, unless the intention of the legislature that it should have such an operation and effect, was so clearly indicated in it, as by no possibility to admit of any other construction; for such a construction is decidedly discountenanced, and the inclination and efforts of the courts have uniformly been to give statutes a prospective operation simply. *Sedw. on Stat. & Cons. Law*, 193, 194. A statute is to take effect and is to operate from the date of its passage, unless it is otherwise appointed in the statute. *Dwar. on Stat.* 9 *Law Libr.* 684. *Mathew v. Zane,* 7 *Wheat.* 164. *Sedw. on Stat. & Cons. Law*, 202.

In some of the cases now before the court, judgment has already been obtained in this court, not under the statute in question, but under the general and pre-existing statute of the State; and such claims are merged in and extinguished by such judgments, and they cannot be sued on again in any form of action. *Price v. Moulton,* 70 *E. C. L. R.* 560. 1 *Ch. Pl.* 212, 478. *Hollis v. Morris,* 2 *Harr.* 128. *Duchess of Kingston's Case,* 2 *Smith's Ld. Ca.* The judgment to be rendered under the statute in question, is a general judgment and a judgment *in personam*, and not a judgment *in rem*. But it is otherwise under the mechanics' lien law in Pennsylvania.

But the court will observe that this statute in its terms applies to any building or structure in the singular number only, and it evidently contemplates that each and every building or structure to which the provisions of it are designed to be applied, shall be distinctly and separately described in the affidavit to be filed in the case. And yet, the affidavits and bills of particulars filed in these cases, speak, some of them of two, and some of three buildings or houses, but without designating what portion of the materials was furnished for, or how much of the labor was performed on, each of them separately, or making any distinction between them in these respects. On the contrary, the charge is made against them *in solido*. And such being the charge, how is the lien of the judgment when it is entered, to be apportioned between the several buildings? And is it in accordance with the meaning and intention of. the act that the lien of the judgment should so rest upon them? There are also, of course, separate and distinct city lots on each of which these houses stand, and yet, the affidavits and bills of particulars filed, speak of them collectively as the real estate on which they are situated, without any regard to the division limits and the appropriate and respective lots and premises on which each of them stands.

*Bradford, for the plaintiffs.* It is true that judgment has already been taken in some of the cases under the general act, but if a party obtains a judgment under the statute now in question, it must be in strict conformity with the provisions and requirements of it, and the question thence arises, what is the nature, legal effect and operation of such a judgment? The idea of this act was derived from Pennsylvania, where they have long had a similar statute, with various amendments to it from time to time, and numerous judicial decisions in regard to it; and under which a judgment upon such a claim, is held to be a judgment *in rem*, and against the building itself, and not *in personam*, or against the defendant in the suit personally merely. *Serg. Mech. Lien Law, Appendix* 317. It has also

been decided in that State that where there is more than one house and they are adjoining houses, they may be included in one and the same bill of particulars. The words of their statute are in the singular number also, " any dwelling house or other building" are the terms employed in it, and in the case of *Chambers v. Young,* 3 *Harris* 265, *Gibson C. J.* said that where the houses were contiguous, or in one block, the term building would cover it. And the same rule of construction was adopted in the case of *Taylor v. Montgomery,* 8 *Harris* 445. *Serg. Mech. Lien Law,* 256, 258.

But to return to the consideration of the nature and character of the judgment to be recovered under this statute. It is not to be a general, but a special judgment, and must be a judgment *in rem,* and not *in personam.* If it is to be a general judgment, or a judgment *in personam,* and not a special judgment, or a judgment *in rem,* that is to say, a special judgment against the property to be bound by it, then the plaintiff in it would be obliged, in suing out an execution upon it, to proceed to an *inquisition* and condemnation of the property as real estate, before he could sell it, or in case it would rent for a sufficient sum in seven years to pay the debt, to an *elegit.* Such, however, was not the intention of the Legislature in providing this special remedy for this particular class of persons, who could ill afford to lay out of the profits of their daily labor, until the amount could be slowly realized by such a tedious and tardy process, and to whom such a remedy would be but an incumbrance and a misfortune, instead of a substantial benefit. The object rather was to facilitate the prompt and speedy collection of these claims out of the property bound by them, not only without any *inquisition,* or *elegit,* but even without any writ of *fi. fa.* to sell and dispose of any personal property the defendant might possess, before proceeding to realize and collect the judgment out of the only property the defendant could have which could be bound or affected by it. The judgment was designed, therefore, as soon as entered, to be equivalent to a

judgment of condemnation against the particular property against which it is entered, and analogous to a judgment of condemnation upon a writ of attachment; and the recourse upon it was intended to be the same. For as to the execution on such a special judgment, since this court is clothed with express authority and power to devise and frame whatever new writs may at any time be necessary to execute its judgments, it would become its province and its duty to direct such execution process to be prepared as may, in its opinion, be required to meet such a contingency.

Under the statutes of 1803, 1806 and 1808 in Pennsylvania, which gave the legal remedy of a personal action at common law against the defendant on the filing of the claim of the plaintiff pursuant to the provisions of them, it has been decided by the courts in that State, that notwithstanding the action given by the statutes against the defendant, was a common law action against him personally, both the proceeding and the judgment against him was *in rem*, under the statutes. *Serg. Mech. Lien Law*, 151, 152, 153. *Bicknell v. James*, 7 *Watts* 9. It therefore does not conflict with the view which they had expressed as to the nature and effect of the proceedings and judgment to be had under this statute, that the action under it is a common law and personal action against the defendant.

When a statute is purely remedial in its nature, as this is, the action, the judgment and the lien being all but parts of the remedy or redress for the recovery in law of the claim, it is a well settled principle of statutory construction, that it may be so far retrospective, or retroactive in its operation and effect, in such cases as these, as to apply to and include materials furnished or labor performed prior to the passage of the act. And as the judgments to be now rendered under this statute, will be special judgments *in rem* and judgments of condemnation against the particular property and premises specified and described in the affidavits, and will not bind, or become a lien, on any other property of the defendant, we contend that the plaintiffs are not esstopped or concluded by any other general judgment

or judgments heretofore recovered in any of the cases under the general statute in this court, but that both may lawfully subsist under the two statutes, and that the special remedy provided by this new statute is a cumulative remedy purely, but that the payment of either would constitute, of course, a satisfaction of both judgments for one and the same debt.

*Houston, J.,* announced the opinion of the Court. The first objection taken by the counsel for the defendant in these cases was that the sum or amount demanded by the plaintiffs respectively in the several bills of particulars and affidavits filed by them, exceeds the sum of twenty-five dollars, and as they were all filed at the November Term 1861 of this Court, after the passage of the first act, which was on the 7th day of March 1861, but before the passage of the second act to amend the same, which was on the 21st day of January 1862, and the former act then provided in express terms that only such mechanics, laborers and material men as had " furnished work and labor, or materials, or both, to an amount not exceeding twenty-five dollars," for such buildings or structures, should be entitled to the benefits of that act, these claims are directly prohibited and excluded by it, notwithstanding the second act has subsequently amended it by repealing and striking out of the passage quoted, the word " not," and re-enacting it as thus amended, because it was not in the power of the Legislature, even if such was its intention, to impart to it any retroactive effect or operation, so as to include them within the amended provision of the statute. But according to the view which the court takes of the meaning and intention of that provision of the original act, as it stood before it was amended, it will not be necessary for us to express any opinion upon the question of law presented in relation to it. For it is sufficient to state, without controverting the law which has been read to us in regard to ambiguity and uncertainty in general in the language of statutes, that there is a well recognized distinction to be

found in the books, and even in the author particularly
cited, between such ambiguity and uncertainty as we have
referred to, and a palpable absurdity, or downright contra-
diction occuring in two or more provisions of one and the
same statute.    Because in such a case as we have last
mentioned, he states with approval the ruling of the Court
of Appeals of New York in *Newell v. The People*, 3 *Seld.*
97, to the effect, that whether we are considering an agree-
ment between parties, a statute, or a constitution, with a
view to its interpretation, the thing we are to seek is the
thought which it expresses.    To ascertain this, the first
resort in all cases is to the natural signification of the
words employed in the order and grammatical arrange-
ment in which the framers of the instrument have placed
them.    If thus regarded, the words embody a definite
meaning, which involves no absurdity and no contradiction
between different parts of the same, then that meaning
apparent on the face of the instrument is the one which
alone we are at liberty to say was intended to be conveyed."
*Sedw. on Stat. & Cons. Law*, 246, 238.    And when tried by
this test, we find such an evident and palpable absurdity,
and such a downright contradiction in terms in the first
section of the original act, in the inadvertent insertion of
the word "not" in the first mention of the limitation of
twenty-five dollars, and the omission of it in the next and
correct paragraph in relation to the restriction contained
in the same section, we cannot hesitate for a moment
to reject it as a manifest error in a word not intended to
be there; for it is impossible to believe, or to suppose that
any legislature could have been guilty of such a palpable
absurdity as to pass such a statute, and at the same time
to intentionally limit and restrict the operation of it to de-
mands not exceeding the sum of twenty-five dollars.    And
yet, all this is the effect evidently of a mere accident, of
the unintentional and unobserved occurrence of the word
"not" in the first sentence, and which occurs no where
else in such a connection any where else in the whole stat-
ute.    The error is so patent and apparent upon the face of

it, that it does not rise to the dignity or gravity of an ambiguity, or an uncertainty even in the meaning of the statute, but is an utter absurdity and contradiction in terms and constitutes such a gross and manifest error as not only to be self-evident, but to rectify. itself. by the context as soon as it is read. We have therefore no hesitation in saying that the section should have always been read and interpreted as if that word, did not appear in it in that connection. And this entirely disposes of the question and the argument as to what effect we are to give to the second, or amendatory act in relation to the claims in question, as they are governed by the former, which has not been repealed, or superseded, but only amended and corrected by the latter act.

The next objection taken by the counsel for the defendant, applies to the cases only in which the counsel for the plaintiffs have already obtained judgments under the provisions of the general statute, and without waiting to obtain judgments under the statute in question, on the ground that they are thereby concluded and estopped from recovering any further judgments upon the same causes of action, even under the special statute in question ; and which has given rise to the question so elaborately discussed in the course of the argument, as to the nature and character of the proceeding and judgment provided for in this statute. On behalf of the plaintiffs it was contended, in anaology to a statute of Pennsylvania of a similar scope and object, and upon the authority of judicial decisions under it in that State, that it is a proceeding and judgment *in rem* purely, binding only upon the particular building or structure for which the materials were furnished, or on which the work and labor was performed, and the real estate on which it is situated, as set forth and described in the affidavit of the plaintiffs accompanying the bill of particulars filed as required by the act, from the time the furnishing of the materials was commenced, and the work and labor was begun, and nothing more ; and that the design of it was simply to supply an addi-

tional and speedy remedy for the recovery of a judgment which should, when obtained, constitute a specific lien upon the particular building and lot from the time the furnishing of the materials and the work and labor were commenced upon it. But that the remedy is special and limited in its operation and merely cumulative in its character, (being entirely restricted to such bills, such property, and such judgments and liens upon it) and therefore, that it neither precludes, nor is it precluded by, a general judgment recovered *in personam* at common law, or under the provisions of the general statute, in another form of action, upon the same cause of action and against the same defendant.

It is to us a matter of regret that we have not had an opportunity to examine more fully the statutes and rulings in Pennsylvania on the subject. But as this is the first enactment of the kind we have ever had in this State, and is a new and untried experiment of no little gravity and importance to the people of it, and is introduced as a novelty into the general code and body of our laws without any legislative explanation or definition of the operation and effect which it is to have in relation to them, or to what extent it is incidentally to vary or modify them, we cannot implicitly rely on the decisions of any other State under similar enactments, for our guidance or instruction under such circumstances, or follow them any further in the interpretation and construction of it than our own best judgment, and reason and reflection may approve as intrinsically right and proper in such a case. Both our inclination and conviction of duty, therefore, is not to extend the operation of the act by construction any further than the terms of it clearly require, and to leave it to the Legislature to remedy whatever defect or deficiencies which may be found to attend it when put into practical operation and effect.

On turning to the statute in question and observing the provisions of it, the first thing that strikes us is the remarkable resemblance which they bear to the provisions

contained in the fourth section of our general and comparatively recent statute in regard to pleading and practice in civil actions, *Rev. Code, chap.* 106, *p.* 377, in the mode of procedure prescribed in the special class of cases provided for in the act now under consideration. The mode of proceeding in the suit to the recovery of judgment is almost identically the same under the two statutes, the principal, if not the only difference being that the affidavit of the cause of action under the latter is required to describe the particular property and real estate on which it is situated specially proceeded against, and must also be accompanied with a bill of particulars of the materials furnished for, or of the work and labor performed upon it. Under both statutes the action or suit is strictly a common law action between persons within the State, and in which a summons must be issued and served upon the defendant, " as in an action of assumpsit, for work and labor or material furnished," to quote the language of the act itself, in order to give the court jurisdiction of the case. It has no inanimate party, or thing, or object for a respondent. It is not an attachment, and has no quality or attribute of lien, seizure, or sequestration involved in, or as incident to it, and has no effect, not even on the defendant himself, unless served on him personally, or by copy left at his usual place of abode, which must be within the limits of the State, as required by law in like cases under the general statute. Such is the familiar and common law character of the                  action of assumpsit merely, which this statute provides     the recovery of judgment in such cases ; and it certainly partakes in no degree whatever, of the nature of a proceeding, or of a judgment *in rem*, but is clearly a common law proceeding substantially, (modified in some of its features by statute) *in personam* against the person named as party defendant in it, and, of course, when the judgment is recovered in it, it must be a judgment *in personam*, and can be nothing else. Indeed, the judgment itself to be rendered under this act, against the defendant in the suit, is not to differ in any of its

terms, or upon the face of it, from a judgment in an action of assumpsit at common law, or under the general statute. The only difference consists in the special and peculiar effect, or lien which this statute gives to it in the class of cases provided for in it. The lien of a judgment is in fact, no part or portion of it, but only an effect or incident of it. It is invisible, of course even on the face, or in the body of it, and exists only in the binding force, effect and operation which the law accords to it. In this particular class of cases the legislature has seen proper to provide by this act, first, that the judgment shall constitute a specific lien on the property for which the materials and work were furnished, and secondly, that such lien shall have relation back to, and bind the property from the day upon which the the work and labor was begun, or the furnishing of the materials was commenced, and shall take priority accordingly.

But is this the sole office, effect and operation of such a judgment ? The statute does not so declare, nor do we think that a proper legal construction of it, will warrant that conclusion. It does not declare or import that this special remedy, judgment and lien, which it has provided for this particular class of creditors in the community, shall be considered to be a cumulative remedy merely, or shall not impair, abridge, or diminish their legal right to bring another action at common law, or under the general statute, upon the same original cause of action and against the same party, either before, or after the recovery of such a judgment under the statute in question. And it is equally clear if it does not so expressly provide, that we ought not to infer or presume that such is the meaning or effect of it. A former recovery of judgment before a judicial tribunal having jurisdiction of the cause and the parties to the action, for the same cause of action, anywhere, has ever been held to be a complete and absolute defence in bar to another action upon it; and so universal is the rule now, that it is well recognized and established throughout Christendom, at least, that a former recovery of judgment

in one country, is a conclusive and incontestible defence to a second suit on the same original cause of action in any other, wherever the court rendering it, has jurisdiction both of the cause and of the parties to it. And if such were not the rule of law on the subject, where would be the end of lawsuits, or of the multiplication of judg-ments against a party on one and the same original cause of action ? The anomaly therefore of allowing one of these creditors even, to recover two judgments on one and the same cause of action against one and the same party, is too great and too glaring to warrant us in presuming that the legislature intended any such thing, in the absence of any express provisions in the act to that effect. And entertaining this view, we have accordingly no hesitation in saying that in the cases now before us, in which the plaintiffs have already obtained judgment against the defendant upon their claims under the general statute, or at common law, they cannot recover judgments on the same claims again under this statute.

Considering this act, however, as only a part of the law of the State on the subject of suits, judgments and the liens which result from them, and construing it together with the general statute before referred to and the common law in relation to the matter, which it does not re-peal, abolish or alter, except so far as it varies and modi-fies them in the special cases to which it applies, we are of opinion that a judgment recovered under it pursuant to its provisions, is not only a judgment *in personam* against the defendant in it, but that it will have all the properties and effects of a judgment recovered against him in this court generally, and not under this particular statute, and will have the same lien upon all his other real estate from the date of its recovery, as a judgment recovered against him at common law, or under the general statute; but that it will also become a specific lien on the building or struc-ture and the real estate upon which the same is situated, for which the materials were furnished, or upon which the work and labor was performed, and relate back to the day

upon which the said work and labor was begun, or the furnishing of the said materials was commenced, and will take priority accordingly; provided all the requirements of the act shall have been duly complied with for that purpose. The remedy provided by this statute for the recovery of the judgment with the specific lien on the particular property described and referred to, is consequently only a concurrent remedy with that which the plaintiff may have under the general statute, or at common law, for the same demand at his own option ; but it is not cumulative, and therefore when he has made his election and has recovered judgment in either one of these methods, he cannot resort to either of the others and recover another judgment against the defendant on the same demand.

The provisions of the statute which we have thus far been considering, pertain only to buildings or structures erected, altered, or repaired, and the real estate on which they are situated, and, of course, the specific lien of the judgment obtained under these provisions, on such property, will be a real security, or a lien upon the whole of it as real property. But the statute is not exclusively confined to such buildings or structures, for there are similar provisions made in the fifth, sixth and seventh sections of it, to secure the claims of material men and mechanics and all kinds of workmen, for materials furnished and work done on any ship or vessel within the State. The marked distinction and difference made in the remedy and mode of proceeding in the latter case, however, serves to show very clearly, we think, that the legislature had no idea or intention of making the proceeding or judgment under the preceding provisions of it against real property a proceeding, or judgment *in rem ;* because in regard to that kind of property all the preceding provisions of the act terminate even abruptly with the recovery of the judgment and the specific lien of it as provided for, without a word as to the execution of it, whilst in regard to ships and vessels, which are personal property and destined to depart beyond the limits of the State as soon as

finished, it was careful to provide that upon the filing of the bill of particulars and his affidavit by the plaintiff, a writ of attachment shall issue for the seizure of the property to be held by the sheriff of the county, until the defendant shall enter into recognizance with security to the plaintiff to pay the condemnation money and all costs, or failing to do so, the same to be retained and sold on judgment of condemnation being rendered against it by the court, and the proceeds applied to the payment of the creditors. This, of course, would be what we would term a proceeding and judgment *in rem* specially provided for by the statute in the case of a ship or vessel only. And as the legislature was particular thus specially to provide this prompt and speedy process for the satisfaction of a judgment of condemnation against this kind of personal and pre-eminently transitory property, in case satisfactory security was not given for the payment of the plaintiffs' claim upon the attachment and seizure of it, we cannot suppose it would have left the execution of a judgment of the former description recovered under the pre eding provisions of the act, but safely and permanently secured by a specific lien on real property, entirely unprovided for in it, if the main and immediate object of the enactment of it had not unquestionably been, as it evidently was, rather to secure the specially preferred claims of these classes of creditors, than to provide a more speedy and expeditious method for enforcing the collection and payment of them, and particularly when secured, as they thus would be, by a judgment and a first and specific lien on sufficient real property. And although the question is not now formally and properly before the court for adjudication, as these cases now stand, the last remark will meet the suggestion of the counsel for the plaintiffs, that it is the province and duty of this court to devise and frame such process of execution as may be necessary to execute such a judgment *in rem*, as it has been contended all judgments must be which are entered under the act, whether against real or personal property, to save recourse to the tedious and dila-

tory process for the sale of real estate on judgment and execution now known to our practice, such as an *inquisition* and *elegit* where the lands will rent for a sufficient sum in seven years to pay the debt, since it was not intended by the legislature, as has been alleged, that a creditor in such a judgment should ever be subjected to such unreasonable and intolerable delay in the execution and collection of it. But, as we have before said, the radical and fundamental error which underlies and pervades such a misconception of the true meaning and object of the statute, so far as real property, at least, is affected by it, consists in mistaking the lien for the judgment itself, the former being but a legal incident and effect of the latter ; and as it is purely a creature of the law, and has no existence in contract between the parties, but exists independent of their agreement, it is competent for the law, and the law making power, to vary or modify it, to restrict or extend it, or even, to impart to it a two-fold effect and operation, though proceeding from one and the same judgment, by giving it, as in this case, a specific lien on certain specially designated and described real property from a date anterior to the judgment, and also a general and indefinite lien upon all other real property of the defendant, from the time of the recovery of it. A judgment creditor has by virtue of the lien of it, no right to the land or property bound by it, for it is neither *jus in re*, nor *jus ad rem*, neither a *right in* the property, nor a *right to* the property, and therefore if he should release all his right in, or all his right to the property, he might afterward extend or sell it on the judgment; for the lien after all, amounts only to a security against subsequent purchasers and encumberances. *Brace v. Duchess of Marlborough*, 2 *Pr. Wms.* 491. 4 *Kent's Com.* 437. And this was all the legislature intended to give and secure to a judgment creditor on such real property from the day the work was begun upon it, or the furnishing of the materials for it was commenced, under the first and second sections of the statute in question, so far as it should depend upon that statute alone,

but which repeals or annuls no other law of the State which has any relation to the subject matter ; and as the statute goes no further than this in such cases as we now have before us, and says nothing more than this, we are constrained by one of the soundest and most obvious rules which apply in the interpretation of statutes, to give it the construction which we have here announced.

Writers on the subject divide legal actions and judgments into three classes, namely, *in rem*, *in personam*, and *in rem et personam*, or *in utramque*, as the last is generally denominated ; and they are thus respectively defined, *in rem* whenever the thing claimed by any one is declared by the judgment to be his, either by his right as creditor, or the possession of it is given him in any other manner ; *in personam* when he is condemned to give or suffer, to do or not to do any thing, or if the *status* of his person may be affected by it ; and *in utramque* where it is of a mixed nature, and both *in rem et in personam*, and that is when both the *thing* and the *person* may come at the same time into condemnation.   *Sto. Conf. of Laws*, sec. 584 *n* 1 *Burgundus, Tract*, 3, *n*, 1, 2, *p.* 84, 85.   One thing however will be found as an invariable and inseparable quality or incident of a judicial proceeding *in rem* purely, and that is a seizure of the thing to be condemned in some form or other by the process of the court regularly preceding the consideration and adjudication of the right or claim asserted to it before the tribunal.   Perhaps, the nearest approach we have in our practice under the common law and our statutes, to a pure proceeding and adjudication *in rem*, is under our statutory process in cases of domestic and foreign attachment, in which, however, the writs always issue *in personam*, or against the defendant by name, but with a mandate to attach or seize his goods and chattels, rights and credits, lands and tenements, which is invariably done, as they can only be sued out upon an affidavit in the one case, that the defendant has left the State to avoid the payment of his debts, or in the other, that he resides out of it.   But, although such proceedings

are not strictly, they are nevertheless considered in the nature of proceedings *in rem*. In all such cases, however, the principle of law is well settled, that the judgment *in rem*, or *against the thing*, is conclusive as to the title and transfer and disposition of the property in question under it; but it is only conclusive and binding on the party *in personam* so far as the *res* or property itself is concerned. *Sto. Conf. of Laws, secs.* 592, 593. And this exposition is sufficient to show, we think, that no proceeding, adjudication, or judgment *in rem*, whatever, was or could have been in the contemplation of the legislature when any of the provisions of the statute before us was under consideration, which related to any buildings or structures other than ships and vessels.

To the inquiry submitted, whether judgments can be entered under the act for any portion of the claims in question for work and labor done, or for materials furnished prior to the passage of it, we reply that it cannot. Even a purely remedial statute is not to have any operation anterior to the enactment of it without an intention clearly indicated in the terms of it, that it shall have that effect, which are entirely wanting in this act. Besides, as it introduces an entirely new feature in regard to the lien of a judgment to be entered under it, making the specific lien of it by relation to antedate the judgment when entered, we think the act itself ought to have no retrospective operation, unless there was an express provision in it to that effect.

It now only remains to notice the objection taken by the counsel for the defendant, to the sufficiency of the affidavits filed on behalf of the plaintiffs, in several, if not all of the cases, on the ground, as alleged, of the uncertainty and impropriety in the description of the building, structures and premises referred to in them, and upon the ground that the statute evidently contemplates and requires that each building, when there are two or more together, shall be separately and distinctly described in the affidavit, and that the statute must not only be construed strictly, but a

strict compliance with the true meaning and import of it will be required in all cases ; in regard to which we shall now say but little.   For this is not the time to hear and determine definitively any such questions, nor can we have the proper and adequate means at such a stage of the cases, to inform ourselves sufficiently on such questions of fact, to decide them even satisfactorily to ourselves, perhaps, and as they doubtless should be examined, understood and considered whenever they come to be ultimately and finally concluded and settled in the courts.   They will better and more properly arise for such consideration and determination, if arise they ever should, after the judgment in any case has been entered and the lien has attached, and it becomes of immediate practical importance to the plaintiff in particular, to establish the extent of his lien and to precisely designate and identify the building or structure and premises specifically bound by his judgment. This it might even now require a number of witnesses to do.   At all events, in all cases of doubt and uncertainty, it will be incumbent upon him to do this, as the filing of the affidavit and bill of particulars is an *ex parte* proceeding entirely on his part, and no party will be responsible for, or affected by any material errors or insufficiencies in them, but himself and his privies after him.   And, therefore, it is of much more importance to the plaintiff than to the defendant, that whatever is done by him in this respect, should be done properly and according to the substantial requirements of the statute.   And although the ancient maxim of *caveat emptor* is, perhaps, destined to lose none of its force when these judgments come to be executed by a public sale of the premsies bound by them, the modern maxim of *caveat creditor* will probably soon be come equally important in connection with them.